IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

HARDY STORAGE COMPANY, LLC,

        Plaintiff,

v.                //     CIVIL ACTION NO. 2:07CV5
                               (Judge Keeley)

PROPERTY INTERESTS NECESSARY TO
CONDUCT GAS STORAGE OPERATIONS IN
THE ORISKANY SANDSTONE SUBTERRANEAN
GEOLOGICAL FORMATION BENEATH PROPERTIES
LOCATED IN HARDY AND HAMPSHIRE COUNTIES,
ET AL.,

        Defendants.

<u>MEMORANDUM OPINION/ORDER</u>
<u>GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST</u>
<u>DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT</u>

On April 28, 2008, plaintiff Hardy Storage Company, LLC ("Hardy"), filed a motion for summary judgment against <u>pro</u> <u>se</u> defendants Fred Shiflett, III ("Fred Shiflett") and Karen Shiflett (jointly "the Shifletts"), on the issue of the just compensation due to them in this case. For the reasons stated below, the Court **GRANTS** Hardy's motion and **ORDERS** that Hardy pay $50.00 an acre in just compensation to the Shifletts, as well as prejudgment interest, for a total of $4817.23 in this case.

## I. FACTS AND PROCEDURAL HISTORY

On January 19, 2007, Hardy filed a Complaint to condemn property interests necessary to conduct natural gas storage operations in the Hardy Storage Field in Hardy and Hampshire Counties, in West Virginia. Prior to the filing of the Complaint,

**MEMORANDUM OPINION/ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

the Federal Energy Regulatory Commission ("FERC") had issued a certificate of public convenience and necessity pursuant to the Natural Gas Act, 15 U.S.C. § 717, et seq., that authorized Hardy to operate a natural gas storage field in the Oriskany sandstone formation, a naturally occurring storage reservoir. Hardy, acting pursuant to 15 U.S.C. § 717f(h), then sought to obtain the ownership rights necessary to store gas in that formation. It also sought to condemn, and pay just compensation for, any economically recoverable reserves of native gas existing in the formation.

With regard to the Shifletts, Hardy sought to condemn an easement to inject, store and remove natural gas in and from the Oriskany formation, located approximately 6,800 feet below the surface of the Shifletts' property. It did not seek to condemn any surface rights on their property, and, although it did seek to condemn the existing native gas, those rights, in any case, were owned by Hampshire Gas Company rather than the Shifletts. Tax Map 33, Parcel 9-1. In total, Hardy sought to condemn 89.208 acres of underground storage. Fred Shiflett and his mother, Karen Shiflett, own the tract of land at issue as joint tenants with rights of survivorship. Deed of Conveyance, Att. 6 to dkt. no. 260.

## MEMORANDUM OPINION/ORDER
### GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST
### DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT

On February 13, 2007, Hardy filed a "Motion for Partial Summary Judgment and Immediate Access and Possession of Easement Condemned for Underground Natural Gas Storage, Native Gas and Well Site." On February 16, 2007, the Notice of Condemnation was served on the Shifletts at their correct address. <u>See</u> dkt. no. 111. Following briefing by many of the defendants, although not the Shifletts, the Court granted Hardy's motion for partial summary judgment on March 28, 2007. That Order granted Hardy the property rights as described in the Complaint as to each property, but left open the issue of just compensation for each. It also granted Hardy immediate access to the condemned property, so that it could begin injecting and storing natural gas in the Oriskany formation.

On April 28, 2008, Hardy filed a motion for summary judgment against the Shifletts, asserting that they had failed to sustain their burden of proof as to the just compensation due for the condemnation in this case, and urging the Court to find that no just compensation is due in this matter, or, in the alternative, to enter an order of just compensation in the amount of $50.00 per acre.

On May 8, 2008, following the filing of Hardy's motion for summary judgment against them, Fred Shiflett, acting <u>pro se</u>,

responded by letter to the Court, indicating that he and his mother had received Hardy's motion for summary judgment, but that this was the first information they had ever received from Hardy regarding this case.  He asserted they had never received the Complaint, the motion for partial summary judgment, or any notices of depositions or requests for interrogatories.

The Court conducted a hearing with Hardy and Fred Shiflett on May 12, 2008, at which it determined that, although the Notice of Condemnation had been served at the proper address, many of the later materials Hardy had sent to the Shifletts had been mailed to the wrong address.  Accordingly, the Court directed Hardy to provide both of the Shifletts with the relevant case materials, as well as any offer of settlement, and to re-serve discovery and set new deposition dates.  The Court further extended the Shifletts' period to respond to Hardy's motion for summary judgment until July 14, 2008.

Thereafter, on June 9, 2008, Fred Shiflett filed a notice of a demand for a jury trial.  Then, on June 25, 2008, Hardy filed a motion in which it indicated that it intended to supplement its existing summary judgment motion against the Shifletts on the basis of new information that it had recently learned through discovery.

**MEMORANDUM OPINION/ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

On July 8, 2008, Fred Shiflett filed a motion to extend the period to respond to the motion for summary judgment, due in part to Hardy's indication that it would be supplementing its summary judgment motion.

The Court granted the motion to extend on July 11, 2008, directing that Hardy file any supplement to its motion by July 25, 2008, and that the Shifletts respond by September 15, 2008. On the same day, however, the Court received a response from Fred Shiflett to Hardy's summary judgment motion.

Thereafter, on July 25, 2008, Hardy supplemented its motion for summary judgment. On September 22, 2008, Fred Shiflett requested another extension of time to respond to Hardy's motion, alleging that an appraisal of the property had been performed but that the appraiser had not yet provided a report. The Court granted the extension, and Fred Shiflett timely filed a response on October 15, 2008. Hardy filed its reply on October 22, 2008. Then, on October 31, 2008, Fred Shiflett filed a response to that reply, and on November 10, 2008, Hardy filed a final reply. Accordingly, after extensive briefing, the motion is now ripe for review.

**MEMORANDUM OPINION/ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

The Court notes that Fred Shiflett, acting <u>pro</u> <u>se</u>, has been filing briefs and documents purportedly on behalf of both himself and his mother. <u>Pro</u> <u>se</u> defendants, however, may not file documents on behalf of other <u>pro</u> <u>se</u> defendants. <u>See</u> <u>Myers v. Loudoun County Public Schools</u>, 418 F.3d 395, 399 (4th Cir. 2005) ("The right to litigate for oneself . . . does not create a coordinate right to litigate for others."). Accordingly, the briefings and documents filed by Fred Shiflett pertain to him alone, and the Court concludes that Karen Shiflett has failed to respond to Hardy's motion for summary judgment.

## II.  STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The Court, in making this determination, reviews the evidence presented in the light most favorable to the nonmoving party. <u>Matsushita Elec. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587–88 (1986).

In this case, the Court may enter summary judgment for Hardy only if there is no genuine issue of material fact with regard to

**MEMORANDUM OPINION/ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

the amount of just compensation due to the Shifletts. Just compensation "means the full and perfect equivalent in money of the property taken," which the United States Supreme Court has interpreted as meaning the fair market value of the property sought to be condemned. <u>U.S. v. Miller</u>, 317 U.S. 369, 373 (1943). Significantly, the property owners bear the burden of proving the fair market value at trial. <u>See</u> <u>U.S. ex rel. and for Use of Tennessee Valley Authority v. Powelson</u>, 319 U.S. 266, 273-74 (1943).

### III.   LEGAL ANALYSIS

In its motion for summary judgment and supplement to that motion, Hardy contends that the Shifletts have failed to establish the amount of just compensation in this case and failed to present facts sufficient to raise a genuine issue of material fact as to that question. It points out that, at a hearing on September 5, 2008, the Court explained to Fred Shiflett that he would have to obtain an expert opinion in order to defeat Hardy's motion for summary judgment and proceed to trial. <u>See</u> Sept. 5, 2008 Hearing Trans., dkt. no. 330-2. Hardy argues that because the Shifletts failed to produce such an opinion, they have not met their burden of establishing just compensation in this case.

## MEMORANDUM OPINION/ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST
## DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT

Hardy further contends that the easement for gas storage in the Oriskany formation has no impact on the fair market value of the Shiflett's property, and that a one-time nominal payment of fifty dollars an acre, for a total of $4,460.40, is just compensation in this case. <u>See</u> Decl. of Douglas Holley, dkt. no. 222-7.  Finally, Hardy asserts that the storage of gas in the Oriskany formation does not present any risk of gas explosions or leaks on the Shifletts' property. <u>See</u> Decl. of Richard Fulcher, dkt. no. 260-10.

In response, Fred Shiflett argues that, because he and his mother were not properly served with the Complaint or motion for partial summary judgment in this case, the Court should set aside the Order of partial summary judgment and prohibit Hardy from using the underground storage under the Shifletts' property. Alternatively, he contends that the actual amount of just compensation due is $4,056,480.00, an amount that compensates him for the total loss of value of the property, as well as for the gas storage.  He also argues that Hardy has, in fact, condemned native gas belonging to the Shifletts and that they should be compensated for that as well.

MEMORANDUM OPINION/ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST
DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT

## A.    The Order Granting Condemnation

Initially, Fred Shiflett attacks the Court's Order of Partial Summary Judgment granting Hardy an easement and immediate access to inject, store and remove gas in and from the Oriskany formation. He argues that, having not been properly served with the pleadings and the motion for partial summary judgment, he was not afforded an opportunity to object to that motion at the appropriate time.  He additionally asserts that Hardy failed to negotiate a settlement agreement in good faith, which he contends Hardy was required to do.

### 1.  Service of Process

It is undisputed that the Shifletts were served with the Notice of Condemnation at their correct address, but the address listed by Hardy on many of the subsequent certificates of service was incorrect.  Nevertheless, for the reasons that follow, there is no need to revisit the Court's Order granting Hardy partial summary judgment in this case.

The order of partial summary judgment granting the condemnations was based on the FERC's decision, pursuant to the Natural Gas Act, to grant Hardy a certificate of public convenience and necessity.  Because the FERC, not this Court, decided the issue

**MEMORANDUM OPINION/ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

of necessity, that decision cannot be attacked in this proceeding. See <u>Tennessee Gas Pipeline Co. v. 104 Acres of Land</u>, 749 F. Supp. 427, 430 (D.R.I. 1990) (concluding that district courts may not hear collateral attacks on the validity of FERC certificates); <u>USG Pipeline Co. v. 1.74 Acres in Marion County, Tenn.</u>, 1 F. Supp. 2d 816, 821 (E.D. Tenn. 1998) (holding that challenges to FERC decisions of necessity must be brought in the Court of Appeals).

In addition, although the Fourth Amendment of the United States Constitution requires that property owners receive notice or hearing before being deprived of property, the Fourth Circuit Court of Appeals has found that, in the context of a taking of private property for public use, such predeprivation notice and hearing is not required. <u>Presley v. City of Charlottesville</u>, 464 F.3d 480, 489 (4th Cir. 2006). Moreover, in the context of condemnation, "when the alleged deprivation is effectively a physical taking, procedural due process is satisfied so long as private property owners may pursue meaningful postdeprivation procedures to recover just compensation." <u>Id.</u> at 490 (<u>citing</u> <u>Bailey v. Anderson</u>, 326 U.S. 203, 205 (1945) (holding that due process does not require a hearing prior to occupation of land as long as the owner has the

opportunity to be heard prior to a final determination of the just compensation)).

Thus, because the Shifletts are now being offered the opportunity to present evidence and be heard on the issue of just compensation, they can claim no violation of due process. Moreover, because they cannot collaterally attack the merits of the FERC certificate granting Hardy the right to condemn the property in this case, reopening the Order of Partial Summary judgment would be futile and the Court declines to do so.

### 2. "Good Faith" Settlement Negotiations

As a second challenge to the Order granting condemnation, Fred Shiflett contends that Hardy did not engage in good faith settlement negotiations. He contends that Hardy's settlement offer of $50.00 per acre of condemned gas storage is inadequate compensation for the 89.208 acres of storage space it has obtained. He argues that Hardy could not rent a storage unit, such as a shed, of that size for such a small amount of money. He further alleges that Hardy did not "negotiate" with him, but rather made an offer that he found unacceptable. Thus, Shiflett argues that Hardy failed to engage in "good faith" negotiations.

**MEMORANDUM OPINION/ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

Hardy points out, correctly, that it has no legal duty under the Natural Gas Act or Federal Rule of Civil Procedure 71.1 (formerly Rule 71A), which governs condemnation actions, to engage in good faith negotiations. Rather, it need only show that it had been unable to reach an agreement regarding just compensation with the property owners. Additionally, Hardy points out that the storage in this case is underground and thus does not affect the surface of the land, unlike storage containers such as sheds.

Accordingly, because it agrees that Hardy is not required by the Natural Gas Act or Rule 71.1 to engage in "good faith" negotiations with the landowner, the Court finds no basis to set aside its earlier ruling on this ground. <u>See</u> <u>East Tennessee Natural Gas LLC v. 3.62 Acres in Taxewell County, Virginia</u>, 2006 WL 1453937 *10 (W.D. Va. May 18, 2006) ("[N]othing in the [Natural Gas] Act or Federal Rule of Civil Procedure 71A requires the condemnor to negotiate in good faith. All the Act requires is a showing that the plaintiff has been unable to acquire the property by contract or has been unable to agree with the owner of the property as to the compensation to be paid.").

MEMORANDUM OPINION/ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST
DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT

**B.  Just Compensation**

The sole remaining issue is the amount of just compensation due to the Shiffletts from Hardy for the condemnation.  As noted, the Shifletts, as the property owners, bear the burden of proving just compensation by demonstrating the fair market value of the condemnation.  See Pawlson, 319 U.S. at 273-74.  Hardy asserts that their failure to produce an expert to testify on this issue means that no genuine issue of material fact remains in the case, and summary judgment is therefore appropriate.  Although he did not disclose any experts, Fred Shiflett alleges that he is due $4,058,86788 in compensation, and proffers several arguments to support this figure.  The Court will address each in turn.

**1.  Diminution in Fair Market Value**

To establish the fair market value of the property interest condemned in this case, the Shifletts bear the burden of establishing the price that a willing and informed buyer would pay for the property, considering its present use and its highest and best use.  See Olson v. U.S., 292 U.S. 246, 255 (1934).  Where, as here, the property interest condemned is only a partial taking of the property, just compensation is determined by the diminution in market value as measured by the difference between the fair market

**MEMORANDUM OPINION/ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

value of the land before the condemnation and the fair market value after.  U.S. v. Banisadr Bldg. Joint Venture, 65 F.3d 374, 378 (4th Cir. 1995).

Fred Shiflett contends that the fair market value for his property is $43,880.00 per acre.  This figure is derived from a the tax assessment of the Shifletts' property prepared by the Hampshire County, West Virginia tax assessor.  "Residential Review Document," dkt. no. 257-2.  The assessment, however, pertains only to the one acre on which the Shifletts' farmhouse is located.  Thus, the remaining acres are not valued at the same level.  Nevertheless, Shiflett argues that the highest and best use of their property would be to subdivide the property into one acre tracts for residential use, and thus each acre would be valued at $43,880.00. He contends, therefore, that the fair market value of his property before the taking was $3,914,096.00.

Shiflett next asserts that the diminution in value that he and his mother have sustained as a result of Hardy's condemnation is one hundred percent; in other words, that the fair market value of his property has been reduced to zero.  To support this contention, he asserts that he and his mother unsuccessfully attempted to sell the property after the condemnation occurred.  He attributes this

**MEMORANDUM OPINION/ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

lack of success to the fact of the condemnation, arguing that Hardy's easement to store natural gas under his property renders his property unsafe, and thus deters potential buyers. Accordingly, he argues that the just compensation for the value of the land is the full $3,914,096.00.

The Shifletts, however, have presented no admissible evidence as to the value of their land before and after the condemnation, and thus no admissible evidence of the diminution in value, if any, that resulted from the condemnation. Land owners cannot submit tax assessments as evidence of a property's fair market value. U.S. v. Certain Parcels of Land, 261 F.2d 287, 291 (4th Cir. 1958). Thus, Fred Shiflett has failed in his attempt to establish the pre-condemnation fair market value of his property. Moreover, the fact that he has been unable to find a willing buyer for the property after the condemnation does not support the conclusion that the condemnation reduced the value of his property to zero.

Although Shiflett contends that Hardy's storage of gas in the Oriskany formation over 6,000 feet below the surface of his property renders the property unsafe, and therefore discourages potential buyers, here again, he has failed to support his contention with an expert opinion. Instead, he has provided

several documents printed from internet sites that assert that natural gas can leak through natural cap rock and that injection and removal of gas from natural storage containers can cause subsidence. See dkt. no. 303-2.

Hardy, on the other hand, points out that, during its review of this matter, the FERC considered the potential safety hazards associated with the gas storage, and concluded that the only safety risk arises on properties containing injection and observation wells, and then only if the wells are improperly constructed. See dkt. no. 95-3. Hardy is not constructing any wells on the Shifletts' property, however, and because they have provided no expert evidence indicating a serious risk to the value of the surface of the property from the gas storage, the Court finds this assertion without merit.

Importantly, this Court informed Fred Shiflett at the hearing on September 5, 2008, that, in order to defeat Hardy's motion for summary judgment, he would need to obtain an expert, such as an appraiser, who could opine on the effect of the condemnation on the fair market value of the property. Neither Fred nor Karen Shiflett, however, has provided such an opinion from any source that could be admitted into evidence in this case. Accordingly,

**MEMORANDUM OPINION/ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

the Court concludes that Fred Shiflett's assertion that the diminution in fair market value to his property is $3,914,096.00 is not supported by admissible evidence.

### 2. Compensation for "Storage"

Fred Shiflett appears to view the value of the easement for underground storage as a separate basis for compensation, and argues that he should receive compensation for the easement in addition to compensation for the diminution of value to his property. He alleges that he is due $89,200 for "storage," a figure which results from multiplying the number of acres of underground gas storage by $1,000.00, the approximate amount per acre that Hardy allegedly paid to the neighbors of the Shifletts pursuant to a settlement agreement. He contends that Hardy should offer him at least the same amount that it offered his neighbors for the storage easement.

Evidence of settlement offers made to other parties is inadmissible to prove just compensation. See U.S. v. 13,255.53 Acres of Land, 158 F.2d 874, 877 (3d Cir. 1946)(citing U.S. v. Foster, 131 F.2d 3, 5 (8th Cir. 1942)). Moreover, as explained above, just compensation is the equivalent of the diminution in fair market value to the property that results from the

**MEMORANDUM OPINION/ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

condemnation. Thus, settlement offers made by Hardy to other parties is wholly unrelated to the calculation of just compensation for the Shifletts, and cannot be based on such evidence.

### 3. Condemnation of Native Gas

Fred Shiflett seeks an additional $55,571.00 for condemnation of native gas on the property. Hardy, however, did not condemn native gas from the Shifletts, because they did not own the gas or oil rights for their property. As proof, Hardy has provided the deed that granted the property to Fred Shifflett, III and Karen Shiflett on January 26, 1988, which includes exceptions and reservations, and specifically states that the transfer excepts "[a]ll of the oil and gas and the rights to any and all thereof which may be found on or underlying the parcel of land conveyed hereby . . . ." Deed, dkt. no. 260-6, p. 2.

Moreover, the Order granting condemnation in this case provides that the native gas underlying the parcel of land designated on Tax Map Parcel 33-9.1, the map representing the Shifletts' property, is to be condemned from Hampshire Gas Company, not Fred Shiflett and Karen Shiflett. See Hardy's Summary Judgment Motion, dkt. no. 222-3. Therefore, any just compensation for the

**MEMORANDUM OPINION/ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

native gas underlying the Shifletts' property is due to Hampshire Gas Company, not the Shifletts.

### 4. Amount of Just Compensation Due

While the Shifletts have failed to establish that the fair market value of their property has diminished as a result of the condemnation, Hardy has estimated that just compensation in this case should be a one-time payment of $50.00 an acre.  In support of that estimation, it attaches a Declaration of Douglas Holley ("Holley"), Manager, Asset Management for Columbia Gas Transmission Corporation, a partner of Hardy's.  Dkt. no. 222-7.  Holley states that he has worked as a land agent for Columbia Gas and other companies for approximately 25 years, and is currently responsible for all land matters associated with the Hardy Storage Project. Id.  In that capacity, he regularly analyzes the value of properties for condemnations and makes offers of settlement.  Id.

Holley states that, based on his experience, the condemnation of underground storage rights when no surface rights have been condemned does not impact the fair market value of the property. Nevertheless, he asserts that a one-time payment of $50.00 per acre for the storage space condemned is just compensation.  In this

**HARDY STORAGE V. FRED SHIFLETT, III, ET AL.**                    2:07CV5

**MEMORANDUM OPINION/ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST
DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

case, 89.208 acres were condemned; thus he calculates that the just compensation is $4,460.40.

Although Holley does not explain the basis for his conclusion that $50.00 an acre is just compensation, Hardy has since provided an explanation in its expert disclosure and report, filed on December 17, 2008. Dkt. No. 339. In that report, Hardy's expert, David A. Sirna, Sr. ("Sirna"), opines that a one time payment of $50.00 an acre is just compensation for the taking in this case. Dkt. No. 339-2, p. 3. Sirna is a licensed Independent Fee Appraiser who has performed commercial timberland appraisals, as well as appraisals of farms, estates, and commercial and residential properties since 1992. Id. at p. 4. He is a Registered Professional Forrester and a Certified General Real Estate Appraiser. Id. at p. 5. He is a member of several professional organizations, including the Association of Consulting Foresters, the Society of American Foresters and the West Virginia Woodland Owners Association. Id.

Initially, Sirna, in his expert opinion, agrees with Holley that there is no diminution to the fair market value of the Shiflett's property as a result of the condemnation. Id. at p. 1. In reaching this conclusion, Sirna compared the values of three

**MEMORANDUM OPINION/ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

comparable properties sold in the Hampshire and Hardy counties area in 2005 and 2006.  <u>Id.</u> at p. 2.  At the time of their respective sales, one of those properties had a lease in effect for its underground gas storage rights, while the other two had no such encumbrance.  <u>Id.</u>  In analyzing the sale prices, Sirna determined that the lot with the storage lease was not adversely affected by the lease; indeed, it sold for $3,085.00 an acre, while the other two lots sold for $3037.00 an acre and $2,889.00 an acre.  <u>Id.</u> Thus, Sirna concluded there is "no discernible difference between the sales prices that can be attributable to the gas lease."  <u>Id.</u> at p. 1.

Despite finding no reduction in the fair market value of the property based on the taking, Sirna nevertheless concludes that just compensation for the condemnation can also be determined by calculating the value paid in the market for similar rights. Specifically, using the Direct Capitalization Rate method, Sirna divided a comparable annual net operating income by an appropriate capitalization rate to yield the estimated value.  <u>Id.</u> at p. 3.  In this case, the annual net operating income, i.e. the rent or lease of the underground storage, is estimated at $4.00 an acre, the amount paid for the lease of storage rights by Columbia Gas

**MEMORANDUM OPINION/ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

Transmission Company to the owner of a nearby property.  Id. at p. 2.  Sirna opined that a typical commercial real estate capitalization rate for the Hardy and Hampshire counties area is 8%, a rate he derived using published sources as well as actual real estate transactions.  Id. at p. 3.  From that, he concluded that the $4.00 annual payment per acre divided by the 8% Capitalization Rate yielded a net present value of $50.00 per acre.  Id.  Thus, he considers a one-time payment of $50.00 per acre to be the value paid in the market for similar rights.

In this case, Hardy condemned 89.208 acres belonging to the Shifletts; at a rate of $50.00 per acre, the just compensation is $4,460.40.  Because the Shifletts have failed to present admissible evidence disputing this figure, the Court concludes that a one-time payment of $4,460.40 is just compensation to them in this case.

**C.   Prejudgment Interest**

In addition, Hardy must pay prejudgment interest on the amount of just compensation from the date of the condemnation, March 28, 2007, to the date of judgment, March 9, 2009.  See U.S. v. Eltzroth, 124 F.3d 632, 638 (4th Cir. 1997) ("The date of taking 'fixes the date as of which the land is to be valued and the Government's obligation to pay interest accrues.'" (quoting U.S. v.

**MEMORANDUM OPINION/ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

<u>Dow</u>, 357 U.S. 17, 22 (1958)).  No federal law establishes the appropriate procedure for determining what interest rate applies, and district courts may exercise discretion in this area.  <u>See Washington Metro. Area Transit Authority v. One Parcel of Land in Montgomery Co., Md.</u>, 706 F.2d 1312, 1322 (4th Cir. 1983)("The choice of an appropriate rate of interest is a question of fact, to be determined by the district court . . . .").

Here, the Court concludes that the "Current Value of Funds" rate, established by the United States Department of Treasury, for the date of the condemnation establishes a reasonable rate of interest.  <u>See</u> Financial Management Service, A Bureau of the United States Department of the Treasury, Treasury Current Value of Funds Rate,  http://www.fms.treas.gov/cvfr/index.html  (last  visited February 11, 2009).  This rate is "used to calculate interest on overdue  Federal  Government  receivables  and  to  determine  the effectiveness  of  taking  cash  discounts . . . on  Government payments."  <u>Id.</u>  The Current Value of Funds rate in effect for March 2007, when the Court granted condemnation in this case, was four percent (4.0%).  <u>Id.</u>

This  interest  rate  will  be  compounded  annually  to  fully compensate the Shifletts for the condemnation.  <u>See</u> <u>Cement Div.,</u>

## MEMORANDUM OPINION/ORDER
### GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST
### DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT

National Gypsum Co. v. City of Milwaukee, 144 F.3d 1111, 1116 (7th Cir. 1998)("It is, of course, settled in the case law that compounding of prejudgment interest is acceptable."). To calculate the prejudgment interest, using a 4% interest rate and compounding annually, the Court will use the following formulas:

$$fj = j \times m$$

and

$$m = (1 + r/n)^{nT}$$

Knoll, Michael S., The Calculation of Prejudgment Interest, University of Pennsylvania Law School: Scholarship at Penn Law (2005), http://lsr.nellco.org/upenn/wps/papers/120 (hosted by Berkeley Electronic Press)(last visited February 11, 2009). In these equations, the variables represent the following:

fj - Final Judgment (just compensation plus prejudgment interest)
j - Judgment (amount of just compensation)
m - multiplier (for calculating compounded interest)
r - Prejudgment Interest Rate
T - Prejudgment period
n - Frequency with which interest is compounded

Id.

After applying these formulas to the case at hand, the Court concludes that the appropriate amount of prejudgment interest is $356.83, and, therefore, the total judgment is $4817.23.

**MEMORANDUM OPINION/ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST
DEFENDANTS FRED SHIFLETT, III AND KAREN SHIFLETT**

### IV.   CONCLUSION

For the reasons stated, the Court **ORDERS** Hardy to pay Fred Shiflett, III and Karen Shiflett **$4817.23** in compensation for its condemnation of an exclusive easement to store gas in the Oriskany formation underlying the Shifletts' property.   This figure represents the just compensation for that taking, as well as prejudgment interest on that award.   If payment is not made within ten (10) business days of the date of this Order, post-judgment interest will begin to accrue.   As this is the sole remaining issue pertaining to the Shifletts in this action, the Court **DISMISSES** the portion of the case involving the property interests of Fred Shiflett, III and Karen Shiflett **WITH PREJUDICE** from this case.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record and all <u>pro</u> <u>se</u> defendants.   The copies to Fred Shiflett, III and Karen Shiflett are to be sent by certified mail, return receipt requested.

DATED: March 9, 2009.


/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE